## Kammer-Friedman Company v. Caskey, et al.

(Decided November 12, 1926.)

### Appeal from Boyd Circuit Court.

1. Trial—Overruling Motion to Set Aside Swearing of Jury and Continue Case Because Counsel had Misquoted Evidence, and Stated that Jury Should Not Consider Certain Things in Arriving at Dam-

ages, Held Not Error, where Evidence Showed Some Basis for Arguments.—In suit for breach of contract to furnish certain amount of scrap iron which plaintiffs agreed to cut, overruling motion to set aside swearing of jury and continue case on ground of plaintiffs' counsel's arguments that plaintiffs had cut 350 tons in ten days, and that jury should not take into consideration, in arriving at cost of cutting, any workmen's compensation or cranage or gas and air, held not error, in view of evidence showing some basis for arguments.

2. Contracts.—Evidence held to sustain finding of oral contract by defendants to furnish certain amount of scrap iron to be cut by plaintiffs at certain price per ton and breach thereof by defendants.

3. Trial—Plaintiffs' Counsel's Statement that Plaintiffs were American Citizens, and Not Jews, and had More Character than Defendants; Held Not Ground for Setting Aside Swearing of Jury and Continuing Case.—Statement of plaintiff's counsel in argument "That plaintiffs were high-class American citizens, and not Jews, and that plaintiffs had more character than defendants and their counsel combined," although in bad taste, held not ground for setting aside swearing of jury and continuing case, where record indicated such reference could not have aroused prejudice of jury.

4. Damages—For Breach of Contract to Furnish Certain Amount of Scrap Iron to be Cut at Certain Price, Measure of Damages was Difference Between Total Contract Price and Cost of Performing Work, if Permitted to Complete Contract.—In action for breach of contract of defendants to furnish certain amount of scrap iron to two plaintiffs and two associates, to cut at $2 per ton, measure of damages held to be one-half the total difference in the contract price of $2 per ton and reasonable costs to plaintiffs of cutting metal, if they had been permitted to complete contract.

DYSARD & MILLER for appellant.

WAUGH & HOWERTON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellants Kammer and Friedman are doing business at Ashland as partners, under the firm name of Kammer-Friedman Company. They buy all kinds of old iron and steel, and by the use of heavy machinery cut the same into pieces for the purpose of sale to furnaces.

Up to about May, 1923, they appear to have employed their machine operatives and paid them by the day, but about that time there was a change of policy and in some instances thereafter they contracted for the cutting of the iron and steel by the ton.

This is an action by Clay Caskey and Quisenberry wherein they allege, in substance, that they, together with Vallance and James Caskey, on or about the 2nd of May, 1923, entered into an oral contract with the defendants by the terms of which the four were to operate the defendants' electric cutting machine and cut for them into certain lengths divers kind of scrap iron and steel, and that defendants contracted to furnish to the said four named parties 2,700 tons of scrap iron and steel which the plaintiffs and their said two associates agreed and bound themselves to cut into pieces according to the terms of the contract; the contract to be carried out by the plaintiffs on the defendants' premises in Ashland, Ky.; and that in consideration of the work and labor so to be done and performed by the four named parties the defendants agreed to pay to them the sum of $2.00 per ton for each and every ton so cut by them. That immediately thereafter the four, in accordance with their contract, entered upon the work, and after they had cut about 250 tons of the 2,700 tons, the defendants, without cause or reason, violated the terms of their contract and ordered and directed the plaintiffs and their associates to quit work under its terms, which violation occurred on the 16th of May, 1923. They allege that under the contract price they would have made a profit on the 2,450 tons of about $4,900.00, and the two plaintiffs prayed judgment for their one-half of such profit, amounting to $2,450.00.

The reason James Caskey and Vallance were not joined as plaintiffs is that defendants, prior to the filing of this action by the other two, had settled and adjusted their claims for damages.

The answer puts in issue the material allegations of the petition, and in a second paragraph the defendants allege that they had in May, 1923, entered into a contract with Vallance to cut the iron and steel for them at the price of $2.00 per ton, Vallance to employ such help and assistance as he desired. It is then alleged that the plaintiffs had settled and adjusted all claims of Vallance and James Caskey growing out of the breach of said contract with Vallance, and expressly denying any connection of either of the plaintiffs with the Vallance contract.

It is obvious, therefore, that the two controlling issues of fact were (1) whether there was a contract to which the plaintiffs or either of them were parties, and

(2) if there was such contract the amount of the profit the two plaintiffs would have made if they had been permitted to comply with it in full.

The evidence is convincing that for a time the four men operated under some sort of an agreement, the basis of which was fixed at $2.00 per ton, and equally convincing that after so operating the defendants declined to further permit them to operate upon that basis.

During the argument of counsel for appellees defendants entered a motion to set aside the swearing of the jury and continue the case because of the improper argument and conduct of plaintiffs' counsel. The basis of this motion was that counsel had misquoted the evidence and had stated to the jury that it should not take into consideration in arriving at the cost of cutting the metal any workman's compensation or cranage, or gas or air; and because he appealed to the prejudices of the jury by stating that plaintiffs were high-class American citizens and not Jews, and that plaintiffs had more character than defendants and their counsel combined.

There was evidence, although it was probably not in accord with weight of the evidence, that the plaintiffs had cut as much as 350 tons of metal in ten days, and while counsel was probably inaccurate in that statement there was at least some basis for the argument. The evidence for the plaintiffs showed in substance that they were to furnish the gas and air necessary in cutting the metal, while defendants were to furnish the cranage, and that nothing was said about workmen's compensation. The evidence was conflicting as to the quantity of gas and air that was necessary in cutting the metal, that of plaintiffs tending to show that very little gas or air was necessary, while that for the defendants tended to show a larger quantity of each was necessary. If as claimed by defendants nothing was said about the cranage cost, it was fair to assume under the circumstances that defendants were to furnish the cranage, for they had the machinery upon the ground and in operation while the plaintiffs had no such machinery. Under the theory of plaintiffs they were independent contractors, and there were only four of them at work in the execution of the contract; obviously therefore if they desired to operate without the benefits of the Workmen's Compensation Act they had a right to do so, and if they, as employees of appellant, had previously worked for them under the

provisions of that act, when they became independent contractors and were working for themselves they were no longer entitled to any benefits coming from that act under their former employment.

We are of opinion, therefore, that the court did not err in overruling this motion.

Nor is the verdict flagrantly against the evidence. Some three or four witnesses testified to the existence of the contract and the contract price, and in addition there is written evidence in the record pointing to the fact that the four men for at least a time operated under some such contract. The evidence as to the amount of profits for which the plaintiffs sued is very conflicting. That of the plaintiffs tends to show that if they had been permitted to carry out their contract they would have made much more than the amount of the verdict, while that for defendants tends to show that the cost per ton of cutting this metal would have been greater than the contract price alleged.

These were questions of fact, and were by proper instructions submitted to the jury.

The reference by counsel to the nationality of defendants was perhaps in bad taste, but we find nothing in the record to indicate that such reference did or could have aroused the prejudices of the jury.

There was much evidence bearing upon the items of expense in cutting this metal as affecting the profits claimed by the defendants; but on the whole, in the light of the amount of the verdict, we cannot say there was any prejudicial error in the admission or rejection of evidence.

There is some complaint of the instruction on the measure of damages, but that instruction accurately told the jury that the two plaintiffs were entitled to recover, if anything, one-half the total difference in the contract price of $2.00 per ton and the reasonable cost to the plaintiffs of cutting the metal, if they had been permitted to complete the contract.

On the whole case we fail to discover any prejudicial error, and the judgment is, therefore, affirmed.